V. C. Glass Carpet Company v. Commissioner.
V. C. Glass Carpet Co. v. Commissioner
Docket No. 24557.
United States Tax Court
1952 Tax Ct. Memo LEXIS 211; 11 T.C.M. (CCH) 506; T.C.M. (RIA) 52149; May 22, 1952
William S. Love, Esq., and J. Bernard Brown, C.P.A., for the petitioner. Michael J. Clare, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined deficiencies in declared value excess-profits tax and excess profits tax in the following amounts: Declared Value
Excess-Profits
Excess
Year
Tax
Profits Tax
1943
$981.97
$6,100.15
1944
533.03
7,334.44
The sole issue before us is whether respondent erred in disallowing a certain portion of the salaries paid to two of petitioner's officers. Findings of Fact Some of the facts are stipulated and are so found. Petitioner, a Kentucky corporation with its principal place of business in Louisville, filed its returns for the calendar years *212 1943 and 1944 with the collector of internal revenue for the district of Kentucky. Petitioner, a tightly held corporation, originally began business as a rug and carpet cleaning establishment, but has grown over the years so that now it cleans, lays, repairs and sells various types of floor coverings. In addition, it manufactures, installs and cleans window shades. It also cleans the interiors of stores and residences. Petitioner serves customers in Kentucky and Indiana. On December 31, 1943, it had 40 employees and on December 31, 1944, it had 42 employees. Since the reorganization of the petitioner corporation in 1927, V. C. Glass has been its president and principal stockholder; W. C. Glass, his son, has also been employed in the petitioner company since its reorganization and since 1932 has been its secretary. Both men are on the board of directors. V. C. Glass began his business career in 1903 when he was employed as a bookkeeper for Carroll-Rogers Company, Inc., a rug and cleaning company. When he terminated his services with that company in 1927 to reorganized petitioner, he was earning $12,000 per year as secretary and manager of the company. As president and treasurer *213 of petitioner he has regularly performed his official duties; he has conducted regular meetings of the stockholders and directors; he has also conducted weekly staff meetings for petitioner's keymen. He has helped in planning, and has carried out the fiscal policy of the petitioner; he supervised its bookkeeping, controlled its procurement and directed its sales program. During the years before us, he sold a substantial amount of petitioner's products. V. C. Glass, except for a few hours each month, devoted all of his time and energy in developing the growth and progress of petitioner. In the years before us he worked an average of 10 hours per day, including many Sundays, without a vacation. He was instrumental in organizing the National Institute of Rug Cleaning which investigated and conducted research in various types of materials produced by the carpet mills. The Institute has improved the relationship between the carpet mills, the rug cleaners and the ultimate consumer. As secretary of petitioner, W. C. Glass performed the duties of his office. He kept the minutes of the meetings of the directors and stockholders. He devoted his full time to the business. In particular, he *214 directed the installation of floor coverings, and in this he supervised the work of 18 men. He directed much of the work at the plant; he employed and dismissed personnel. W. C. Glass, like his father, also sold petitioner's products. Petitioner suffered a manpower shortage during World War II, and the additional work load caused by this shortage was assumed by V. C. and W. C. Glass. A comparison of petitioner's gross sales, net profits and compensation paid to the Glasses is shown below: Net Profit
Gross
(Before
V. C. Glass
W. C. Glass
Year
Sales
Taxes)
Compensation
Compensation
1940
$233,689
$ 3,555
$10,860
$4,980
1941
300,759
14,289
17,000
7,910
1942
280,228
9,748
17,200
8,820
1943
268,177
21,312
17,200
8,820
1944
293,696
30,574
17,200
8,820
A summary of the gross sales of the petitioner is as follows: V.C.
W.C.
Other
Year
Glass Sales
Glass Sales
Salesmen
House Sales
1940
$45,957
$24,543
$123,191
$39,996
1941
43,531
33,344
179,126
44,757
1942
31,876
44,730
155,461
48,159
1943
28,745
53,966
109,698
75,767
1944
24,977
71,871
125,484
71,362
(Cents omitted in all figures in above tables)
*215 The business of petitoner did not require any formal or academic training. However, the processes used in the cleaning and installation of floor coverings required a broad practical experience in the problems inherent in that industry. Both V. C. and W. C. Glass were well trained for the business. Both men had grown up in the business and have spent many years in its practical work. The success of petitioner was primarily due to the efforts of these two men. A reasonable compensation for V. C. Glass for each of the years 1943 and 1944 was $17,200; a reasonable compensation for W. C. Glass for each of the years 1943 and 1944 was $8,820. Opinion Respondent has determined that the deductions claimed in petitioner's returns for 1943 and 1944 for compensation to V. C. and W. C. Glass exceeded a reasonable compensation for services actually rendered within the meaning of section 23 (a), I.R.C. It is respondent's contention that a reasonable amount for each of these years for V. C. Glass is $12,000 and for W. C. Glass $6,000. This determination is an annual $5,200 reduction of the amount actually paid V. C. Glass and a like reduction of $2,820 of the amount *216 actually paid W. C. Glass. Petitioner, on the other hand, contends that the compensation paid V. C. and W. C. Glass was a reasonable compensation for services actually rendered. It is uniformly held that what constitutes a reasonable allowance for salaries or other compensation for personal services actually rendered is essentially one of fact based upon a consideration of the record as a whole. Based thereon, we have found that the compensation paid and claimed was reasonable compensation for V. C. and W. C. Glass for services rendered during the years before us. In determining the "reasonableness" of compensation many factors must be considered. When V. C. Glass reorganized the petitioner in 1927, its annual gross business was approximately $15,000 as compared to $293,696 in 1944. This development was principally the result of the industry and ability of V. C. and W. C. Glass. Through the years, and particularly the years before us, they were responsible for the operation of the business. They made the decisions concerning the purchases, the administration and the financial needs of the petitioner. Their assumption of this responsibility and their successful fulfillment of *217 the obligations under it support the reasonableness of the compensation paid by the petitioner. Among other factors which we considered, and which particularly favor these men, is the record of their sales activity. Together they were responsible for approximately one-third of petitioner's gross sales. If they were paid a sales commission on actual sales at the rate the other salesmen of the petitioner were paid, it would represent a substantial part of the actual compensation received by them. The petitioner has failed to introduce evidence as to comparable salaries in like industries. While such evidence, if available, would have a bearing on the issue, its absence does not necessarily mitigate against the reasonableness of the compensation paid when the evidence as a whole shows that the salaries paid were reasonable. See Mayson Mfg. Co. v. Commissioner, 178 Fed. (2d) 115. Inasmuch as other uncontested adjustments were made in the deficiency notice, a recomputation is necessary. Decision will be entered under Rule 50.